Vanessa CAMERON, Appellant

v.

The STATE of Texas

No. PD–1427–13

Court of Criminal Appeals of Texas.

Delivered October 8, 2014

Opinion on Rehearing March 2, 2016

Gerald Goldstein, Attorney At Law, Donald H. Flanary, II, John T. Hunter, Law Office of John Hunter, San Antonio, for Appellant.

Jay Brandon, Assistant District Attorney, Lisa C. McMinn, State's Attorney, Austin, for the State.

Womack, J., delivered the opinion of the Court, in which Price, Johnson, Cochran, and Alcala, JJ., joined.

The appellant, Vanessa Cameron, contends that her constitutional right to a public trial was violated when the trial court excluded the public from the *voir dire* at the beginning of her trial for murder. She appealed from the judgment of conviction and sentence of 70 years' imprisonment and a $5,000 fine. The Fourth Court of Appeals reversed her conviction,[1] and we granted review. We shall affirm the Court of Appeals' judgment remanding the case for a new trial.

## Trial Proceedings

Before *voir dire* was begun, the bailiff removed all spectators from the courtroom. After the venire panel was seated and the judge called the case, the appellant's counsel stated:

I noticed prior to the Court calling the case for trial, the bailiff ushered out or secluded the general public, to include family and friends of my client. I would ask that family and friends be allowed to be present here in the courtroom during the *voir dire*. They're excluded and I— if they're excluded, I would just put for the record an objection to the 6th Amendment of the U.S. Constitution and Article 1, Section 10 of the Texas Constitution since she does have a right to the public trial.

A lengthy debate followed:

The Court: We recognize their right to be present during the *voir dire*. I'm looking around the courtroom, and the jury panel—we have 65 jury panel members that are going to be here. I notice for the record that every single chair that we have available for attorneys that come in during trial and every chair that we have available for other people have been removed and placed in the jury area because that is the only way we can accommodate the number of jurors in this courtroom.

So we're talking about 65 jury panel members. It's going to take up a huge majority of this courtroom, plus counsel table. I don't see any room

1. *Cameron v. State,* 415 S.W.3d 404 (Tex. App.—San Antonio 2013).

whatsoever where anybody else would be able to sit and observe.

Now, during—before we called the case, we saw a pretty significant number of family members that were walking in. There is no way this courtroom can accommodate them, and I certainly appreciate the security concerns of the State—excuse me, of the sheriff's department. It is a public trial. It's an open trial. Certainly people have the opportunity to observe. We just don't know where to put them, Mr. Esparza.

Defense: Judge, is the Court overruling my objection?

The Court: No, I'm not ruling. I'm just telling you, where can we put them? Where are we going to put them?

Defense: I understand, Judge.

The Court: I'm not overruling you. Where are we going to put them?

Defense: And I still request a ruling from the Court.

The Court: Well, you're—you're objecting to something I haven't made a ruling. What is it that you're objecting to?

Defense: That the public has been excluded from—

The Court: No. No, no. The Court has never ruled that. I've never ruled that the public is excluded. All I'm saying, where do you suggest we put them?

Defense: We could bring in chairs and put them right here in front of the bench, Judge. We can find places to put them.

The Court: Okay. We have attorneys that are seated at both sides. We have security issues. That is unreasonable. Where would we put them? Are we going to have them stand here next to the—next to me? That—I think that would be considered a security risk. You want to open up those doors and have them all stand in that little hallway there so they can observe the whole thing? Maybe we could do that. Would that satisfy you?

Defense: I just wanted an alternative, Judge.

The Court: I'm giving you alternatives. Which one would satisfy you in a way that the bailiffs would feel that their job in keeping the courtroom safe and secure would be satisfied?

Defense: I can't suggest that. If you want to open those doors and put chairs and have people—have the public sit there, that's fine with me.

The Court: We don't have enough chairs. Are we going to—if you want, we can open up those doors in the back and have them stand to where they can observe and hear every single thing that's going on.[2]

The State: And, Your Honor, just for the record, I think that's going to be in violation of any fire codes in this city.

The Court: And that—I mean, we're having issues. Counsel obviously wants her entire family here. I mean, I don't know what else we could do. The courtroom's going to be absolutely stuffed with venire panel members. I don't know what we're going to do.

Defense: But there's no ruling from the Court on my objection.

The Court: Your objection is that people have been excluded from the Court.

Defense: Yes sir.

2. Nothing in the record indicates to us that this was attempted.

The Court: The Court has never ruled that way, so I'm not sure what it is that you're objecting to. . . .

I am telling you that you can have people in this courtroom. I'm telling you that. Do you understand that? So there's no issue in regards to what it is that you're asking. I just don't know where to put them. So I'm not making a ruling that anybody's excluded. I'm not making a ruling denying anything you're asking because I haven't ruled on what it is that you're asking. I haven't told you that you cannot have people in the courtroom. Tell me where to put them and we'll put members of her family.

Defense: Okay. Thank you, Judge.

After this, the court went off the record and apparently continued the discussion, but there is no indication that any spectators were allowed into the court room.

Sometime after lunch and in the middle of the State's *voir dire*, the trial court added:

All right. And while we're on the record and the jury is out, I know that the State is still in the middle of their general *voir dire*. I just want to put something on the record.

Earlier defense asked if members of the defendant's family or other members could sit in, observe portions of the *voir dire*. The Court did not close the proceedings by any means, recognizing the 1st and 6th Amendment rights to the extent of the *voir dire* proceedings.

During the course of discussions, the Court did analyze the four-prong questions tested out in 467 U.S. 39, 104 S.Ct. 2210. Specifically, the Court considered the size and configuration of the courtroom. 65 venire panel members have been summoned to the courtroom. In order to accommodate all 65, there are about ten chairs that are placed in the

gallery. Additionally, there are three or—three other chairs located next to the jury box. Every single chair in the gallery and in the jury box is filled with the 65 individuals.

The court reporter is seated directly in front of the defense table directly in front of the jury box, so there would be no room there. Directly in front of the defense table there is a table used by the probation department that has a computer, a printer, some files. Directly next to the defense table is a panel that has been set up by the defense for use during *voir dire*. Directly behind that panel is a box where the bailiffs sit, a bailiff's table.

The Court considered the size of the configuration. Court also considered alternative courts, knowing that the juries—the central jury room is not adequately sufficient for a trial such as this. Also, the Court is expecting a potentially emotionally charged jury trial, this originally being filed, I believe, as a capital. I know that it is now a murder charge.

As such, the space within the courtroom area for the participants and the bailiffs is very narrow. The Court does not want to make any jury or potential jurors feel in any way constrained with truthfulness and honesty, making them uncomfortable in regards to potential family members next to them.

Essentially, the bottom line is that the Court was concerned about safety and safety in the courtroom. Recognizing that the courtroom is not closed, Defense, before you begin your general *voir dire*, you're certainly able to bring in some family members and we will do our best to accommodate them in areas around the gallery where the Court, where the bailiffs feel security will not

be an issue. All right. Just wanted to put that on the record.[3]

This was the last the issue was discussed. The appellant was found guilty of murder by the jury, and the court assessed a sentence of 70 years' imprisonment and a $5,000 fine.

## Law

"In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial. . . ."[4] This right extends to *voir dire* proceedings[5] and is necessary to insure that jurors, prosecutors, and the court are kept aware of their sense of responsibility and can properly carry out their functions.[6] It discourages perjury by holding parties responsible to the public.[7] A violation of this right is a structural error and does not require any showing of harm.[8]

The right to a public trial may give way to other competing rights or interests (such as a defendant's right to a fair trial). However, these circumstances should be rare, occurring only if: (1) there is an overriding interest (2) based on findings, (3) that closure is essential to preserve higher values and (4) the closure is narrowly tailored to protect that value.[9] Further, the trial court must issue findings specific enough for a reviewing court to determine if the closure was properly ordered.[10]

The party seeking to justify the closure carries the burden of proof of a specific overriding interest. It must be likely that this interest would be prejudiced in the current case, and the closure must be no broader than necessary. The trial court has the burden to consider *all* reasonable alternatives and make findings specific enough to support a closure.[11]

## Preservation of Error

The State argues that the appellant did not preserve her complaint for appeal. As we view it, the record shows very clearly that the appellant's trial counsel brought the issue of the closed courtroom to the attention of the trial court. The court acknowledged the appellant's Sixth Amendment rights and then stated that the courtroom was not closed. Counsel then requested (at least six separate times) that the court rule on his objection, but the court declined to rule.

Texas Rule of Appellate Procedure 33.1 clearly states that, in order to preserve error, the record must show that the trial court either "ruled on the request, objection, or motion either expressly or implicitly *or refused to rule on the request, objection, or motion,* and the complaining party

---

**3.** Again, the record does not indicate that this actually happened.

**4.** U.S. Const. amend. VI.

**5.** *Presley v. Georgia,* 558 U.S. 209, 214, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010); *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

**6.** *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), *quoting In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

**7.** *Ibid.*

**8.** *Lilly v. Texas,* 365 S.W.3d 321, 328 (Tex.Cr. App.2012), *citing Johnson v. United States,* 520 U.S. 461, 468–68, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

**9.** *Waller,* 467 U.S. at 45, 104 S.Ct. 2210; *Press–Enterprise,* 464 U.S. at 510, 104 S.Ct. 819.

**10.** *Ibid.*

**11.** *Waller,* 467 U.S. at 48, 104 S.Ct. 2210; *see also Lilly,* 365 S.W.3d at 329.

objected to the refusal." This happened below.

### Was the appellant's trial closed?

The preliminary question is whether the appellant's trial was in fact closed.[12] This is a question to be determined on a case-by-case basis in light of the totality of the evidence.[13]

The State argues that the lower court erred in disregarding the trial court's findings based on a silent record. But the record in this case is not silent. On the contrary, there are several pages of discussion about the exclusion of the public. As soon as the court went on the record, the appellant's counsel objected to the removal of the public. While it is true that the trial court repeatedly stated that the courtroom was not closed, there was no dispute of the fact that all spectators had been removed. It is well established that "this Court accepts as true factual assertions made by counsel which are not disputed by opposing counsel."[14] Accordingly, we accept as true that the appellant's friends and family were ushered out of the courtroom and not allowed back in.

Indeed, far from disputing these facts, the trial judge sought to justify them. Were the *voir dire* proceedings actually open to the public, the trial judge would not have needed to cite space limitations and safety concerns as reasons to keep the public out. The trial court stated that he could not "accommodate" the appellant's friends and family and that "every single chair" was being used by the venire panel. Halfway through the State's *voir dire* examination, the trial court went on the record and described the cramped conditions of the courtroom at length. He then made findings in accordance with the Supreme Court's *Waller* opinion. These findings track the test for whether or not a closure was justified. Again, were the *voir dire* proceedings actually open, there would be no need for a *Waller* analysis.

The State relies heavily on the fact that the trial court repeatedly stated that he had not ruled that the courtroom was closed. He stated repeatedly that he respected and recognized the appellant's right to a public trial, that he was not ruling, and that he had not ruled, that the court was closed. We ordinarily defer to a trial court's findings of fact. But the judge's own statements show that there was no room in the court for spectators; he all but conceded that no one was allowed to witness *voir dire*.

The record sufficiently shows that the *voir dire* proceedings were closed.

### Was the closure justified?

Having held that the *voir dire* proceedings were, in fact, closed to the public, we move on to the *Waller* test to determine if this closure was constitutionally justified under the Sixth Amendment.

---

**12.** The State argues in its third ground for review that the Court of Appeals erred by not first and separately considering the issue of closure as required under *Lilly*. It is true that *Lilly* states "the first step for a reviewing court when analyzing whether a defendant's right to a public trial was violated is to determine if the trial was, in fact, closed to the public. Once it is determined that the defendant's trial was closed to the public, the reviewing court decides whether that closure was proper." *Lilly*, 365 S.W.3d at 329. Al-

though this order of analysis is preferable, we were able to review the Fourth Court's opinion, which covered the essential issues.

**13.** *Lilly*, 365 S.W.3d at 330.

**14.** *Thieleman v. State*, 187 S.W.3d 455, 457 (Tex.Cr.App.2005), citing *Pitts v. State*, 916 S.W.2d 507, 510 (Tex.Cr.App.1996); *Resanovich v. State*, 906 S.W.2d 40, 42 (Tex.Cr.App. 1995).

Under *Waller,* a closure will be justified only if the trial court makes findings that closure is necessary to protect an over-riding interest and the closure is narrowly tailored to protect that interest.[15] A court also must consider all reasonable alternatives to closure.[16]

In this case, the trial judge's findings cited several interests to justify the exclusion of the public. First, he cited the "size and configuration of the courtroom" and the fact that every chair was used for the venire panel. Next, the court expressed general concerns about safety. Finally, the court explained that he expected the trial to be emotionally charged.

While concerns over space and over-crowding may be legitimate concerns of a trial court, they must not outweigh a defendant's Sixth Amendment rights. In part, this is because there are readily available alternatives to fix these problems. Both this Court and the Supreme Court have suggested that, in such situations, a trial court should move to a bigger courtroom or split the panel in half. It is no valid argument that these alternatives are inconvenient or would cause delay.[17]

Next, while security issues can be over-riding enough to justify a closure, vague or general concerns are not sufficient.[18] The trial court did not make any specific findings concerning specific dangers that would *likely* (not just possibly) occur. On this record, there are only vague mentions of "security concerns" such as "fire code issues" and "police detection issues." At no point did the trial court make case-specific findings about a security interest that was *likely* to be prejudiced. The only

case-specific issue in the record came from one of the bailiffs, who stated in an affidavit that the appellant's mother was a law-enforcement officer who could have legally brought her firearm into the courtroom. However, this concern is a mere hypothetical that was not investigated or adopted by the court. Further, there is no evidence that alternatives were considered (such as asking the appellant's mother to relinquish her firearm).

Finally, we reject the trial court's assertion that the public would prevent the jurors from being truthful. This goes against the entire logic behind the right to a public trial. As the Supreme Court has stated:

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.... In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and *discourages perjury.*[19]

As well as:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of

---

**15.** *Waller,* 467 U.S. at 45, 104 S.Ct. 2210.

**16.** *Presley,* 558 U.S. at 215, 130 S.Ct. 721; *Steadman v. State,* 360 S.W.3d 499, 509 (Tex. Cr.App.2012).

**17.** *Steadman,* 360 S.W.3d at 509.

**18.** *Presley,* 558 U.S. at 215–16, 130 S.Ct. 721.

**19.** *Waller,* 467 U.S. at 46, 104 S.Ct. 2210 (emphasis added).

fairness so essential to public confidence in the system.[20]

These great values, which help to keep our criminal justice system just, could be completely eroded if a trial judge could close a trial because open testimony *might* make some jurors uncomfortable. This is not an argument that we can accept.

### Conclusion

The opinion of the Court of Appeals is affirmed. The trial court was closed at a critical stage at the proceedings. Further, the trial court did not make findings to support a legitimate overriding interest for this closure.[21]

We affirm the judgment of the Court of Appeals remanding the case for a new trial.

Keller, P.J., filed a dissenting opinion, in which Hervey, J., joined.

Keasler, J., concurred in the judgment.

Meyers, J., dissented.

Keller, P.J., filed a dissenting opinion in which Hervey, J., joined.

The Court says that "this Court accepts as true factual assertions made by counsel which are not disputed by opposing counsel," and that is correct. But the Court applies the concept in this case to accept as true "that the appellant's friends and family were ushered out of the courtroom *and not allowed back in.*"[22] Whether the friends and family were allowed back in was, in fact, disputed.

In affidavits filed in response to appellant's motion for new trial, one of the bailiffs said that standard procedure was to clear the courtroom to let the jurors be seated, but he swore that he never said that no one could come back into the courtroom and he never told anyone to leave the courthouse. Another bailiff swore that no one was excluded from the courtroom with the intention of not being allowed to watch the trial, including voir dire. The trial court found as a fact that the bailiffs cleared the courtroom in order to make room to bring the venire panel in and get them organized and seated, but they did not tell any spectators that they were not allowed to watch the voir dire or any other part of the proceedings.

I think Justice Angelini's dissent in the court of appeals was exactly right: appellant failed to satisfy her burden of showing that the voir dire was not open to the public.[23] Justice Angelini pointed out that the trial court offered to open up the doors into the courtroom and allow spectators to stand in the hallway area leading into the courtroom to watch the proceedings.[24] Defense counsel suggested that opening the doors would be acceptable if chairs were put in the hallway area for the spectators to sit.[25] The trial court replied that there were not enough chairs but that the spectators could stand in the hallway area and watch.[26] Defense counsel demanded a ruling, but the trial court replied that he had never ruled that people had been ex-

---

**20.** *Press–Enterprise,* 464 U.S. at 510, 104 S.Ct. 819.

**21.** Another issue of which we granted review, which asked who bears the burden to demonstrate that the proceedings were closed, is dismissed.

**22.** Emphasis added.

**23.** *See Cameron v. State,* 415 S.W.3d 404, 412–20 (Tex.App.—San Antonio 2013, pet. granted) (Angelini, J., dissenting).

**24.** *See id.* at 416, 419.

**25.** *Id.* at 416.

**26.** *Id.*

cluded from the courtroom and he was not sure what defense counsel was objecting to.[27] Defense counsel never responded to the trial court's suggestion that the doors be opened and spectators be allowed to stand and watch the voir dire proceedings.[28]

The trial court told defense counsel on the record, "[W]e can open up those doors in the back and have them stand to where they can observe and hear every single thing that's going on." At that point, defense counsel had the option of saying, "Okay." The fact that he didn't (if he didn't) should not be held against the judge, who had made a suggestion that, if followed, would have allowed the spectators to view the proceedings.

I agree with Justice Angelini that appellant has failed in her burden to show that the courtroom was not open to the public.

I respectfully dissent.

### OPINION ON REHEARING

Hervey, J., delivered the opinion of the Court, in which Keller, P.J., and Meyers, Keasler, Richardson, Newell, JJ., joined.

Appellant was found guilty of murder for killing her former boyfriend. She appealed, arguing that her right to a public trial was violated. The Fourth Court of Appeals agreed and reversed her conviction, holding that Appellant's right to a public trial was violated during voir dire because the public was asked to leave the courtroom to accommodate a large venire panel. *Cameron v. State*, 415 S.W.3d 404, 406 (Tex.App.—San Antonio, 2013). On discretionary review, we affirmed the judgment of the court of appeals. *Cameron v. State*, No. PD–1427–13, 2014 WL 4996290, *1 (Tex.Crim.App. Oct. 8, 2014).

However, we granted the State's timely motion for rehearing and ordered further briefing and oral argument. *Id.* We will vacate the judgment of the court of appeals and remand this cause for further proceedings.

### Facts

Vanessa Cameron was convicted of organizing a murder-for-hire plot to kill the father of her child for life-insurance proceeds. Just before jury selection began, defense counsel suggested that the bailiff had excluded the public from the courtroom, including Cameron's family and friends, and objected that the exclusion violated his client's right to a public trial. The following exchange occurred:

[THE COURT]: We recognize their right to be present during the voir dire. I'm looking around the courtroom, and the jury panel—we have 65 jury panel members that are going to be here. I notice for the record that every single chair that we have available for attorneys that come in during trial and every chair that we have available for other people have been removed and placed in the jury area because that is the only way we can accommodate the number of jurors in this courtroom.

So we're talking about 65 jury panel members. It's going to take up a huge majority of this courtroom, plus counsel table. I don't see any room whatsoever where anybody else would be able to sit and observe.

Now, during—before we called the case, we saw a pretty significant number of family members that were walking in. There is no way this courtroom can accommodate them, and I certainly appreciate the security concerns of the State—excuse me, of the sheriff's de-

---

**27.** *Id.*

**28.** *Id.*

partment. It is a public trial. It's an open trial. Certainly people have the opportunity to observe. We just don't know where to put them, Mr. Esparza.

[DEFENSE COUNSEL]: Judge, is the Court overruling my objection?

[THE COURT]: No, I'm not ruling. I'm just telling you,. where can we put them? Where are we going to put them?

[DEFENSE COUNSEL]: I understand, Judge.

[THE COURT]: I'm not overruling you. Where are we going to put them?

[DEFENSE COUNSEL]: And I still request a ruling from the Court.

[THE COURT]: Well, you're—you're objecting to something I haven't made a ruling. What is it that you're objecting to?

[DEFENSE COUNSEL]: That the public has been excluded from—

[THE COURT]: No. No, no. The Court has never ruled that. I've never ruled that the public is excluded. All I'm saying is, where do you suggest we put them?

[DEFENSE COUNSEL]: We could bring in chairs and put them right here in front of the bench, Judge. We can find places to put them.

[THE COURT]: Okay. We have attorneys that are seated at both sides. We have security issues. That is unreasonable. Where would we put them? Are we going to have them stand here next to the—next to me? That—I think that would be considered a security risk. You want to open up those doors and have them all stand in that little hallway there so they can observe the whole thing? Maybe we could do that. Would that satisfy you?

[DEFENSE COUNSEL]: I just wanted an alternative, Judge.

[THE COURT]: I'm giving you alternatives. Which one would satisfy you in a way that the bailiffs would feel that their job in keeping the courtroom safe and secure would be satisfied?

[DEFENSE COUNSEL]: I can't suggest that. If you want to open those doors and put chairs and have people—have the public sit there, that's fine with me.

[THE COURT]: We don't have enough chairs. Are we going to—if you want, we can open up those doors in the back and have them stand to where they can observe and hear every single thing that's going on.

[STATE]: And, Your Honor, just for the record, I think that's going to be in violation of any fire codes in this city.

[THE COURT]: And that—I mean, we're having issues. Counsel obviously wants her entire family here. I mean, I don't know what else we could do. The courtroom's going to be absolutely stuffed with venire panel members. I don't know what we're going to do.

[DEFENSE COUNSEL]: But there's no ruling from the Court on my objection?

[THE COURT]: Your objection is that people have been excluded from the Court.

[DEFENSE COUNSEL]: Yes, sir.

[THE COURT]: The Court has never ruled that way, so I'm not sure what it is that you're objecting to.

\* \* \*

[THE COURT]: I am telling you that you can have people in this courtroom. I'm telling you that. Do you understand that? So there's no issue in regards to what it is that you're asking. I just don't know where to put them. So I'm not making a ruling that anybody's excluded. I'm not making a ruling deny-

ing anything that you're asking because I haven't ruled on what it is that you're asking. I haven't told you that you cannot have people in the courtroom. Tell me where to put them and we'll put members of her family.

[DEFENSE COUNSEL]: Okay. Thank you, Judge.

Subsequently, the jury found Cameron guilty, and she appealed, arguing in relevant part that her trial was closed to the public.

## Opinions

### 1. Direct Appeal

A divided panel of the court of appeals held that Appellant's right to a public trial was violated. *Cameron*, 415 S.W.3d at 412. The court found that, despite the trial judge's insistence, that he had not closed the courtroom, the record reflects that it was, in fact, closed. *Id.* at 410. The court noted that, while the trial court may have offered an accommodation of allowing members of the public to observe the voir dire proceeding from the foyer of the courthouse, the record does not establish that any steps were taken to facilitate this proffered accommodation. *Id.* Moreover, the appellate court concluded that the trial court did not consider all reasonable measures to accommodate the public during voir dire, including the possibility of splitting the venire panel to make room for spectators to sit in the courtroom. *Id.* According to the court of appeals, because the record does not show that any of these accommodations were employed, the courtroom was closed, and Appellant's Sixth Amendment right to a public trial was violated. *Id.* at 412.

Justice Angelini, writing in dissent, would have held that Appellant failed to satisfy her burden to show that voir dire was closed to the public. *Id.* at 413 (Angelini, J., dissenting). She reasoned that

our opinion in *Lilly* allocated an evidentiary burden to a defendant to show that their trial was closed to the public before considering the *Waller* factors. *Lilly v. State*, 365 S.W.3d 321, 331 (Tex.Crim.App. 2012); *see Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

Justice Angelini also would have held that conducting a trial in a public courthouse should create a rebuttable presumption that the trial was open to the public unless a defendant can show that the trial was closed. *Cameron*, 415 S.W.3d at 415. She agreed with the majority that the appellate record is silent on many factual considerations. *Id.* However, unlike the majority, Justice Angelini concluded that the silence weighs against Appellant as it was her initial burden to show that the trial was closed to the public. *Id.*

### 2. On Discretionary Review

The State appealed the judgment of the court of appeals, arguing that Appellant failed to preserve her complaint for appellate review and that the court of appeals erred in not addressing preservation. It also asserted that the burden was on Appellant to show that her trial was closed to the public and that she failed to meet that burden.

This Court affirmed the Fourth Court of Appeals's judgment, holding that the trial court record "sufficiently shows that the *voir dire* proceedings were closed" and that it was not constitutionally justified under the Sixth Amendment. *Cameron*, 2014 WL 4996290 at *5. The State subsequently filed a timely motion for rehearing, in which it argues that our decision would be nearly impossible for trial judges to implement and that we erroneously dismissed its burden-of-proof ground for review despite the fact that we granted Ap-

pellant relief. We granted the motion for rehearing and address its contentions now.

## Discussion

### 1. General Public–Trial Principles

 The Sixth Amendment of the United States Constitution guarantees an accused the right to a public trial in all criminal prosecutions. U.S. CONST. amend. VI; *Lilly*, 365 S.W.3d at 328; *see Johnson v. United States*, 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). The violation of a defendant's public-trial right is structural error that does not require a showing of harm. *Lilly*, 365 S.W.3d at 328; *see Johnson*, 520 U.S. at 468, 117 S.Ct. 1544. To prevail on a public-trial claim, a defendant must first show that the trial was, in fact, closed to the public. *Lilly*, 365 S.W.3d at 331 (applying the *Waller* test after noting that Appellant met his burden to show that the prison-chapel courtroom was closed to the public in light of the extensive evidence that the public was discouraged from attending the proceedings). To determine if a trial was closed, a reviewing court should look to the totality of the evidence, rather than whether a spectator was *actually* excluded from trial. *Id.* If the defendant's trial was closed, the reviewing court *then* must decide whether the closure was proper. *See id.*

Some courts have applied a less stringent test for "partial" or "trivial" closures, where members of the public are temporarily excluded from the courtroom. These courts require only a "substantial" or "important" interest rather than *Waller*'s "compelling" reason for limiting access in order to justify a closure,[29] in part because a less-than-complete closure does not "implicate the same secrecy and fairness concerns that a total closure does." *Garcia v. Bertsch*, 470 F.3d 748, 753 (8th Cir.2006). For example, these courts have held that partial closures are permissible to exclude certain spectators when it is deemed necessary to preserve order in the courtroom. *See Cosentino v. Kelly*, 102 F.3d 71 (2d Cir.1996) (no violation when defendants' families who had "rioted," causing a mistrial, were excluded).

### 2. Arguments of the Parties'

Appellant argues that the court of appeals reached the right result because both the arguments of counsel and the trial court's responses paint a plain picture of a private proceeding that was closed to the general public. She also asserts that the trial court did not factually controvert the allegations laid out. The trial court never refuted Appellant's principal observation that the bailiff had excluded members of the public, and it repeatedly reinforced Appellant's observation by reminding Appellant that there was no room for any

---

**29.** *See United States v. Perry*, 479 F.3d 885 (D.C.Cir.2007) (Sixth Amendment not violated by exclusion of eight-year-old son of defendant; closure was trivial when son was only person excluded, his presence would not have ensured fair proceedings, discouraged perjury, or encouraged witnesses to come forward); *Carson v. Fischer*, 421 F.3d 83 (2d Cir.2005) (exclusion of defendant's ex-mother-in-law from limited portions of criminal trial did not deny defendant his right to a public trial; although the denial of the right to a public trial is not subject to a harm analysis,

even an unjustified closure may, in some circumstances, be so trivial as not to implicate the right to a public trial); *Ayala v. Speckard*, 131 F.3d 62 (2d Cir.1997) ("[T]he sensible course is for the trial judge to recognize that open trials are strongly favored, to require persuasive evidence of serious risk to an important interest in ordering any closure, and to realize that the more extensive is the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest").

member of the public in the courtroom. Further, Appellant contends that the only matter on which the trial court disagreed with Appellant was the legal result of Appellant's observations and that there is sufficient evidence to determine that her trial was closed to the public. Thus, according to Appellant, regardless of whether the burden of proof is on Appellant to show that her trial was closed to the public, she has met that evidentiary burden.

The State responds that the court of appeals erred by not assigning a burden of proof and that, while this Court's opinion in *Lilly* does not directly address the burden-of-proof issue, it was clearly implicit that the burden is on the defense. *Lilly,* 365 S.W.3d at 331. The court of appeals acknowledged that the record was largely silent to this issue, yet nonetheless ruled, contrary to the trial court's findings of fact, that the court had been closed. Based on the silent record, and the fact that the burden to show the courtroom is closed to the public was on Appellant, the State argues that the court of appeals erred by granting relief without ever mentioning the applicable burden of proof.

Further, the State asserts that the court of appeals failed to follow the standard laid out in *Lilly;* which holds that the first step in analyzing a public-trial claim is finding whether the court was actually closed. *Id.* Instead, the State argues, the court of appeals held that a *Lilly* analysis is one holistic inquiry that includes examining the *Waller* factors. The State contends that this type of review not only makes no sense, but it completely contradicts the precedent laid out in *Lilly.*

### 3. Burden of Proof to Show a Trial is Closed

The parties argue that we have never squarely addressed to whom the burden belongs to show that a trial is closed to public. While it is true that we did not directly address that issue in *Lilly,* our opinion makes clear that the burden to show that a trial is closed to the public is on the defendant.

In *Lilly,* we stated multiple times that the appellant met his burden to show that the trial was closed to the public. For example, "The State also argues that the court of appeals correctly concluded that **Appellant failed to carry his burden** to show that his trial was closed to the public." *Lilly,* 365 S.W.3d at 326 (emphasis added). Again, as pointed out in the dissenting opinion in the court below, this Court stated, "When determining **whether a defendant has proved** that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded." *Id.* at 331 (emphasis added). Finally this Court concluded, "In sum, we hold that, under the facts of this case, **Appellant met his burden** to show that his trial was closed to the public." *Id.* at 331–32 (emphasis added).

We now take the opportunity to definitively resolve this issue and hold that the initial burden of proof is on the defendant to show that the trial is closed to the public. If the defendant fails to carry that burden, the analysis is concluded. Only after a trial is closed to the public is it necessary to determine if the closure was justified.

### 4. Standard of Review of Public–Trial Claim

Next, to resolve whether Appellant met her burden to show that her trial was closed to the public, we must address the applicable standard of review on appeal.

In *Guzman,* this Court held,
[A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the

trial court's fact finding are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "applications of law to fact questions," also known as "mixed questions of law and fact," if the ultimate resolution of those questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category.

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Here, the question of whether a defendant's trial was closed to the public is a mixed question of law and fact that does not turn on credibility and demeanor.

■ Unlike a legal question, such as statutory construction, in which we construe only the legal meaning of words and provisions, when dealing with the Sixth Amendment right to a public trial, deferring to the court's findings of fact that are supported by the record is a necessary prerequisite before an appellate court can resolve whether a defendant met his burden to show his trial was closed to the public based on the totality of the evidence, and then the ultimate legal question of whether a defendant's public-trial right was violated. *Abney v. State*, 394 S.W.3d 542, 548 (Tex.Crim.App.2013).

### Conclusion

Having decided that the initial burden of proof is on Appellant to show that her trial was closed to the public, and after explaining the applicable standard of review on appeal, we vacate the judgment of the court of appeals and remand this cause for it to apply the principles of this opinion.

Alcala, J., filed a dissenting opinion in which Johnson, J., joined.

· Yeary, J., did not participate.

### *DISSENTING OPINION*

Alcala, J., filed a dissenting opinion in which Johnson, J., joined.

I dissent from this Court's judgment. I voted against rehearing this petition for discretionary review, and I continue to believe that this case was correctly decided on original submission. The rationale for my disagreement with this Court's majority opinion is based on the same reasons shown in this Court's original opinion in this case, in which the former majority of this Court determined that the *voir dire* proceedings were closed and that the closure was unjustified under *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), in light of the trial court's failure to make findings to support a legitimate overriding interest for the closure.

With these comments, I respectfully dissent.